IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MARINER HEALTH CARE, INC., ET. AL                                              PLAINTIFFS

VS.                                                                                                               No. 4:04CV245-D-B

JUANITA FERGUSON, ET. AL                                                   DEFENDANTS

OPINION DENYING MOTION TO COMPEL ARBITRATION

Presently pending before the Court is the Plaintiffs' motion to compel arbitration. Upon due consideration, the Court finds that the motion shall be denied.

*A. Factual Background*

The Plaintiffs filed this declaratory action pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, on August 20, 2004, in response to an on-going state court action that the Defendants, herein, initiated for the wrongful death of Jewel Ferguson. The Defendants initiated their state court action on August 18, 2004, in the Circuit Court of Leflore County, Mississippi. The Defendants allege in their state court complaint that while in the Plaintiffs' nursing care facility Ms. Ferguson sustained injuries which ultimately resulted in her death. The Plaintiffs filed this federal action seeking a declaration as to the validity of an arbitration agreement.

On April 16, 2003, Jewel Ferguson was admitted as a resident to Greenwood Health and Rehabilitation Center, a residential nursing care facility affiliated with Mariner Health Care, Inc. ("Mariner"). Ms. Ferguson was a resident of that facility until June 2, 2003, and she died on June 4, 2003, allegedly of injuries suffered at the Plaintiffs' facility. On the date of her admission, Deborah Harrison, Jewel Ferguson's sister, signed various documents on Jewel Ferguson's behalf, including a contract entitled "Agreement for Arbitration." According to the terms of that agreement,

the parties agreed to submit to binding arbitration

> all disputes against each other and their representatives, affiliates, governing bodies, agents and employees arising out of or in any way related or connected to the admission agreement and all matters related thereto, including matters involving the resident's stay and care provided at the facility, including but not limited to, any disputes concerning alleged personal injury to the resident caused by improper or inadequate care.

Deborah Harrison purportedly executed the agreement to arbitrate on behalf of her sister by placing her signature on the signature line. It is clear from the pleadings that Jewel Ferguson could not sign the documents on her own behalf. According to the Plaintiffs' own records, Ms. Ferguson suffered from Human Immunodeficiency Virus (HIV), CVA with right-side hemiparis[1], Hyponatremia[2], and Dysphagia[3].

Jewel Ferguson died on June 4, 2003. In accordance with Miss. Code Ann. § 15-1-36(15), the Defendants in this action sent a letter to Mariner expressing their intent to file a suit against it for negligence, gross negligence, and willful and wanton conduct while Ms. Ferguson was a resident at their Greenwood Facility. On August 18, 2004, Ms. Ferguson's wrongful death beneficiaries filed suit against Mariner in the Circuit Court of Leflore County, Mississippi. On August 20, 2004, the Plaintiffs filed this action seeking a declaration from this Court that the arbitration agreement was valid.

The Plaintiffs now move this Court to compel the Defendants to arbitrate all of their claims against the Plaintiffs. The Plaintiffs also ask this Court to stay or enjoin the pending state court action. The Plaintiffs argue that Deborah Harrison, the decedent's sister, had the apparent authority

---

[1] A stroke which caused right-side paralysis

[2] A condition of water intoxication. It is the medical opposite of dehydration

[3] Usually caused by a stroke and is characterized by the inability to understand, speak, read or write.

to bind her, her heirs and assigns, and all wrongful death beneficiaries to the arbitration agreement. The Plaintiffs state that the agreement is fair, is not unconscionable, and is not a contract of adhesion. The Defendants argue that Deborah Harrison did not have the authority to bind Jewel Ferguson, her heirs or assigns to any arbitration agreement. The Defendants state that Mariner cannot prove that it had a binding arbitration agreement. The Defendants further claim that the purported arbitration agreement was unconscionable and a contract of adhesion.

*B. Discussion*

1. Jurisdiction

Prior to ruling on the merits of this case, the Court must first determine if it has jurisdiction to hear this matter. The Federal Arbitration Act, 9 U.S.C. § 4, "does not create federal jurisdiction. Some independent jurisdictional basis, either diversity or federal question, must be shown." Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc., 138 F.3d 160, 163 n.1 (5th Cir. 1998).

Diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332 is the only jurisdictional basis applicable to this case. The Court finds that all of the corporate Plaintiffs in this case are incorporated under the laws of Delaware and have their principal places of business in the state of Georgia. In addition, the Court finds that all of the Defendants are citizens of the State of Mississippi. The decedent was also a citizen of Mississippi at the time of her passing. Therefore, complete diversity of citizenship exists.

Once finding that complete diversity of the parties exists, the Court must determine whether the amount in controversy exceeds $75,000. "The amount in controversy in a motion to compel arbitration is the amount of the potential award in the underlying arbitration proceeding." Webb v. Investacorp, Inc., 89 F.3d 252, 256 (5th Cir. 1996). The Court finds that in the underlying state court action, the Defendants have asked for medical damages, emotional damages, loss of consortium and

guidance damages, and punitive damages. There is little doubt that the Defendants have met the jurisdictional amount. Therefore, subject matter jurisdiction exists and the Court will now address the merits of the Plaintiffs' motion.

## 2. Standard to Compel Arbitration

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 - 16, provides that a written arbitration provision contained in a contract involving commerce is valid, irrevocable, and enforceable. 9 U.S.C. § 2. The FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Southland Corp. v. Keating, 465 U.S. 1, 10, 105 S. Ct. 852, 857, 79 L. Ed. 2d 1 (1983); Mouton v. Metropolitan Life Ins. Co., 147 F.3d 453, 456 (5th Cir. 1998).

The Fifth Circuit has directed that courts are to perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. OPE Int'l LP v. Chet Morrison Contractors, Inc., 258 F.3d 443, 445 (5th Cir. 2001). First, the court must determine whether the parties agreed to arbitrate the dispute. OPE Int'l, 258 F.3d at 445. In conducting this inquiry, the court must determine whether a valid agreement to arbitrate exists, and whether the dispute in question falls within the scope of that arbitration agreement. Id.; Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1065 (5th Cir. 1998). Once the court finds that the parties agreed to arbitrate the claims, it must consider whether any federal statute or policy renders the claims nonarbitrable. OPE Int'l, 258 F.3d at 446.

## 3. Valid Arbitration Agreement

Arbitration agreements are a matter of contract between the parties. Washington Mutual Finance Group, LLC v. Bailey, 334 F.3d 260, 264 (5th Cir. 2004). Accordingly, the question of whether the parties formed a valid agreement to arbitrate is a matter governed by the principles of

state contract law. May v. Higbee Co., 372 F.3d 757, 764, (5th Cir. 2004). Under Mississippi law, the elements of a valid contract are: (1) two or more contracting parties; (2) consideration; (3) an agreement that is sufficiently definite; (4) parties with the legal capacity to make a contract; (5) mutual assent; and (6) no legal prohibition precluding contract formation. Mauldin Co. v. Lee Tractor Co. of Miss., Inc., 920 So. 2d 513, 514 (Miss. Ct. App. 2006); Rotenberry v. Hooker, 864 So. 2d 266, 270 (Miss. 2003).

The crux of the dispute between the parties and the only issue for the Court to decide is the fourth element for a valid contact, the requirement that the parties have the legal capacity to make a contract. It is undisputed that Jewel Ferguson did not sign the arbitration agreement. It is also undisputed that her sister, Deborah Harrison, did sign the arbitration agreement. The Federal Arbitration Act directs courts to place arbitration agreements on equal footing with all other contracts. EEOC v. Waffle House, 534 U.S. 279, 293, 122 S. Ct. 754, 764, 151 L. Ed. 2d 755 (2002). However, the FAA "does not require parties to arbitrate when they have not agreed to do so." Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488 (1989). Congress intended for the FAA to make arbitration agreements as enforceable as other contracts, but not more so. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404, n. 12, 87 S. Ct 1801, 1806, 18 L. Ed. 2d 1270 (1967). The Supreme Court has stated that "Arbitration under the FAA is a matter of consent, not coercion." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S. Ct. 3346, 3354, 87 L. Ed. 2d 444 (1985). "It goes without saying that a contract cannot bind a nonparty." Waffle House, 534 U.S. at 294, 122 S. Ct. at 764.

The Plaintiffs claim that Jewel Ferguson and her beneficiaries were bound by the arbitration agreement signed by Deborah Harrison. The Plaintiffs argue that Deborah Ferguson signed that

document as Jewel Ferguson's legal representative. The Defendants argue that Deborah Harrison lacked the legal capacity to bind Jewel Ferguson and her beneficiaries to the arbitration agreement. The record reflects that no power of attorney existed.

In order to show that the arbitration agreement is valid, the Plaintiffs must show that Deborah Harrison was in fact Jewel Ferguson's legal representative, or the Plaintiffs must show that Deborah Harrison had the authority to act as an agent on Ferguson's behalf. The Plaintiffs assert that Deborah Harrison had actual, apparent, and statutory authority to act on behalf of Jewel Ferguson. The Defendants citing unpublished opinions from both this district and the Southern District of Mississippi assert that Deborah Harrison held no such authority. The Court notes that Judge David Bramlette, Senior Judge in the Southern District of Mississippi, issued two unpublished opinions ruling on this same issue.[4] The Court further notes that another Court in this District has also ruled on this same issue in three separate cases.[5]

## 4. Agency

An agency relationship exists and a principal is bound by the acts of his agent as against a third party where the agent had: (1) express authority directly granted by the principal to bind the principal to certain matters, (2) implied authority to bind the principal to those acts of the agent that are necessary, proper, and are in the usual scope of the agent's express authority; (3) apparent authority, i.e. authority that the principal has by words or conduct held the alleged agent out as having, and (3) authority that the principal is estopped to deny. Patriot Commercial

---

[4] Mariner Healthcare Inc. v. Guthrie, Southern District of Mississippi, Civil Action No. 5-04-CV-218; Mariner Healthcare Inc. v. Rhodes, Southern District of Mississippi, Civil Action No. 5-04-CV-217.

[5] Mariner Healthcare Inc. v. King, 2006 WL 1716863 (N.D. Miss. 2006); Mariner Healthcare v. Tressie Green, 2006 WL 1626581 (N.D. Miss. 2006); JP Morgan Chase & Co. v. Coneige, 2006 WL 166686 (N.D. Miss. 2006).

Leasing Co. v. Jerry Enis Motors, 928 So. 2d 856, 864 (Miss. 2006).

A. Express or Implied Authority

Actual authority can be either express or implied. See Bailey v. Worton, 752 So. 2d 470, 475 (Miss. Ct. App. 1999). "An express agent is one who is 'in fact authorized by the principal to act on their behalf.'" McFarland v. Entergy Mississippi, Inc., 919 So. 2d 894, 902 (Miss. 2005) (*quoting* Cooley v. Brawner, 881 So. 2d 300, 302 (Miss. Ct. App. 2004)).

In the case *sub judice*, Deborah Harrison had no power of attorney or any court ordered conservatorship giving her the right to sign on behalf of Jewel Ferguson. The Plaintiffs have failed to put forth any proof that Jewel Ferguson gave express authority to Deborah Harrison to act as her agent. Thus, the Court finds that no express authority relationship existed, In addition, without express authority to act as an agent, there can be no implied authority. Thus, Deborah Harrison had no actual authority to act and bind Jewel Ferguson or any of the Defendants to the arbitration agreement. The Court must now turn to its apparent authority analysis.

B. Apparent Authority

The Mississippi Supreme Court has promulgated a three-pronged test to determine if apparent authority exists to bind a principal for the acts of his alleged agent. There must be a showing of (1) acts or conduct by the principal indicating the agent's authority, (2) reasonable reliance upon those acts by a third party, (3) a detrimental change in position by the third party as a result of that reliance. Christ Methodist Episcopal Church v. S & S Construction Co., Inc., 615 So. 2d 568, 573 (Miss. 1993); Alexander v. Tri-County Co-op, 609 So. 2d 401, 403 (Miss. 1992). "An act is considered to be within the agent's apparent authority when a third party is justified in concluding that the agent is authorized to perform it from the nature of the duties which are

entrusted to him." Terrain Enters., Inc. v. Western Casualty & Surety Co., 774 F.2d 1320, 1322 (5th Cir. 1985) (*citing* McPherson v. McLendon, 221 So. 2d 75, 78 (Miss. 1969). Apparent agency arises only where "the principal has intentionally or by want of ordinary care induced third parties to believe [a person is] his agent, although no authority has been conferred upon him either expressly or by implication." Cooley, 881 So. 2d at 302.

The Plaintiffs ask this Court to find that Deborah Harrison had apparent authority when she signed Jewel Ferguson into the nursing center and signed the arbitration agreement. The Plaintiffs rely on Owens v. Coosa Valley Health Care, Inc., 890 So. 2d 983 (Ala. 2004), and In re Ledet, 2004 WL 2945699 (Tex. App. 2004), in support of its claims. While the Court will discuss Ledet later in its opinion, the Court finds none of Plaintiffs' caselaw to be persuasive on this point. In Mississippi, "one who relies on the acts of an agent to bind his principal has the burden of proving the authority of the agent." Textiles Supplies, Inc. v. Garrett, 687 F.2d 123, 126 (5th Cir. 1982) (*citing* Thorp Fin. Corp v. Tindle, 162 So. 2d 497, 500 (Miss. 1964) & Cue Oil Co. v. Fornea Oil Co., 45 So. 2d 597, 599 (Miss. 1950)).

Deborah Harrison's signature as Jewel Ferguson's "legal representative" does not make her an agent without some indication of an express or apparent authority derived from the acts of the principal. The Court can find no action by the principal and no ratification by the principal exhibiting that Deborah Harrison was Jewel Ferguson's agent. The Plaintiffs have failed to show that Ferguson did anything to empower Deborah Harrison as her agent. Therefore, because the Plaintiffs bear the burden to prove Deborah Harrison's authority, the Court will not presume that one exists merely because she signed as "legal representative" and Ferguson did not object to her acting on his behalf. This Court cannot find any notion that Jewel Ferguson was even aware that Deborah Harrison had admitted her to the nursing center and signed an arbitration agreement. In

fact, the Plaintiffs' own assessment of Jewel Ferguson shows the Court that she lacked the mental capacity to understand what was happening.  Therefore, the Court finds that no apparent authority existed and that the Plaintiffs have failed to prove an agency relationship existed.

3.  Statutory Authority

Many states throughout the country have statutes that allow a surrogate or guardian to make health-care decisions for the incompetent or incapacitated patient even where there is no showing of a pre-authorized agency relationship.  <u>See e.g.</u>, Fla. Stat. § 765.401; Cal. Health & Safety Code § 1418.8; Tex. Health Code Ann. § 166.039; N.Y. Mental Hyg. Law § 80.01. Mississippi gives statutory authority to certain persons to make health-care related decisions when the patient lacks the mental capacity to do so on their own.   Miss. Code Ann. § 41-41-211. The relevant portion of the statute reads as follows:

> (1) A surrogate may make a health-care decision for a patient ... if the patients has been determine by the primary physician to lack capacity and no agent or guardian has been appointed or the agent or guardian is not reasonably available.
>
> (2) An adult ... may designate any individual to act as surrogate by personally informing the supervising health-care provider.  In the absence of a designation, or if the designee is not reasonably available, any member of the following classes of the patients' family who is reasonably available, in descending order of priority, may act as a surrogate:
>
>> (a) The spouse, unless legally separated;
>> (b) An adult child;
>> (c) A parent, or
>> (d) An adult brother or sister.
>
> (3) If none of the individuals eligible to act as a surrogate under subsection (2) is reasonably available, an adult who has exhibited special care and concern for the patient, who is familiar with the patient's personal values, and who is reasonably available may act as a surrogate.

Miss Code Ann. § 41-41-211.  A "health-care decision" is defined as a decision regarding "any care, treatment, service, or procedure to maintain, diagnose, or otherwise affect an individual's

physical or mental condition." Miss. Code Ann. § 41-41-203.

The Mississippi Supreme Court has not ruled on this issue, so this Court will look to other states for guidance in its opinion. In Pagarigan v. Libby Care Center, 120 Cal. Rptr. 2d 892, 895, (Cal. Ct. App. 2002), the California Court of Appeals held that a similar law granting surrogate decision-making power of health-care decisions of an incapacitated patient did not grant the authority for the surrogate to bind the patient to the arbitration agreement. That Court found that because the patient was mentally incompetent and incapable of assenting to her children's agreement on her behalf, no actual or apparent authority could exist to bind her or her beneficiaries to the arbitration agreement. Id. at 894. The California Court found that there was no legislative intent for the statute to confer any authority other than those realted to health-care decisions. Id. at 895. The Court held that the fact that the children were granted the authority under California law to give consent for medical treatment on their parent's behalf did not mean that they also had the authority to consent to an arbitration agreement on her behalf. Id.

Similarly, a Florida court held that a patient's son who signed an arbitration agreement on her behalf lacked the statutory authority to bind the estate in a later wrongful death action. Blankfeld v. Richmond Health Care, Inc., 902 So. 2d 296 (Fla. Dist. Ct. App. 2005). That Court stated that waiving the right to sue for damages was not a health-care decision under the statute. Id. at 300. The Court held that there was "nothing in the statute to indicate legislative intent that such a proxy [could] enter into contracts which agree to things not strictly related to health-care decisions." Id. at 301.

The Plaintiffs point the Court to an unpublished Texas case that reached a contrary conclusion. See In re Ledet, 2004 WL 2945699 (Tex. App. 2004). In In re Ledet, the Texas Court of Appeals held that a child of an incapacitated parent had the authority to bind the parent

and all of her heirs, assigns, and trustees. Id. at *2. Similar to Pagarigan and Blankfeld, there was a state law conferring authority to the child of an incapacitated parent to make medical treatment decisions on behalf of the patient. Id, at *4. However, the Texas Court did not distinguish between decisions regarding health-care and those terminating legal rights.

In interpreting the plain language of the Mississippi statute, the Court finds that Deborah Harrison was only qualified to make decisions related to health-care matters. The Court finds the logic and reasoning of Pagarigan and Blankfeld very persuasive. After a reading of the statute, the Court can find no legislative intent to terminate legal rights pursuant to health-care decisions. The Court finds the reasoning and holding in In re Ledet without merit and completely unpersuasive. The Plaintiffs have not produced a valid power of attorney, any proof that Jewel Ferguson made any actions that gave her sister actual or apparent authority to act as her agent, or any persuasive argument that Miss. Code Ann. § 41-41-211 binds an incapacitated patient or her heirs to an agreement that terminates legal rights. Thus, the Court finds that no valid arbitration agreement existed and the Defendants' underlying state court action shall proceed.

*C. Conclusion*

In sum, the Court finds that Deborah Harrison had neither actual, apparent, or statutory authority to bind Jewel Ferguson and her beneficiaries to the arbitration agreement. Therefore, the Court finds that no valid arbitration agreement exists. Thus, the Court shall dismiss the Plaintiffs' claims and the Defendants' underlying state court action shall proceed.

A separate order in accordance with this opinion shall issue this day.

This the 29th day of June 2006.

/s/Glen H. Davidson
Chief Judge